**DeRIGHTER, Plaintiff, v. J. & J. BUILDING COMPANY, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 658759.   Decided October 4, 1957.

Diehm & Farber, Cleveland, for plaintiff.
Mihelich, Drobnic & Mihelich, Cleveland, for defendant.

## OPINION

By J. J. P. CORRIGAN, J.:

The defendant, J. & J. Building Company, has made a timely request that the Court state in writing its Conclusions of Fact herein found separately from its Conclusions of Law.

### FINDINGS OF FACT

The Court finds by clear and convincing evidence the facts in this action to be as follows:

1. John T. Vitkus and John T. DeRighter had close personal relations for many years. That close relationship had existed between these two men of the same nationality since Dr. Vitkus had come to Cleveland, wherein Dr. Vitkus was the personal physician of the DeRighter family; Mrs. DeRighter had been employed by Dr. Vitkus; they had been associated in the same financial institution of which Dr. Vitkus for some years was the head and Mr. DeRighter was, and still is the managing executive; that they had engaged in real estate and building projects together in the past; and other close relationships.

2. Dr. Vitkus proposed to plaintiff early in 1949 that the two gentlemen should join in a building venture on a 50-50 basis, with the understanding that DeRighter would acquire the corner lot of Second Avenue and East 133rd Street, East Cleveland, Ohio, from the owner; that Vitkus had theretofore purchased the three lots easterly therefrom, fronting on the southerly side of Second Avenue in East Cleveland, at Sheriff's sale; that on the four lots they would erect two apartments. The further agreement between the parties was that DeRighter should arrange about the changing of the zoning and arrange for the financing, and do all that was necessary as a preliminary to starting the construction of the two apartments; and further conduct all negotiations with F. H. A. authorities and secure financial advances from the lending institution during the erecting of the buildings; and that Vitkus would let the building contracts to a contractor whom he had theretofore used, and would supervise the construction, without interference with his professional practice, and that any additional money not raised by mortgage financing that was necessary to be deposited, or that was necessary to expend, would be advanced by Vitkus with the understanding that he should secure the repayment thereof before the 50-50 division.

3. The plaintiff acquired the corner lot by paying more than Vitkus had paid for the three lots at Sheriff's Sale and from early 1949 until the occupancy of the buildings at the beginning of 1952, the plaintiff performed all of the services properly, faithfully and successfully required on his part to be done. The buildings were erected and occupied early in 1952.

4. The defendant corporation was formed on account of F. H. A. requirements for the purpose of building these apartments with F. H. A. financing and taking title to the four lots above referred to. Plaintiff deeded his lot to the corporation, arranged for the rezoning of the property to permit the erection of said apartments with the East Cleveland Zoning Commission, and the officials of the City of East Cleveland, and arranged for all of the financing necessary as a Federal loan.

The record establishes that this was the first F. H. A., Section 207 loan. In order to acquire that loan it was necessary to form a corporation and give the financial interests loaning the money the preferred stock in said corporation. The plaintiff, who was then connected with the Ohio Secretary of State's Office, in addition to his other duties, formed the defendant corporation for that purpose and all of the four lots were conveyed to the J. & J. Building Company, defendant herein. The agreement between the individuals further provided that each individual would own approximately 50% of the corporate stock.

5. Subsequently the plaintiff and Vitkus met and agreed without consideration that Vitkus would be the majority stockholder and that the division of the shares would not be 75-75 but 76-74.

6. By substantial testimony from a number of witnesses, the plaintiff has proved by clear and convincing evidence that he performed all of the obligations on his part to be performed under the agreement as alleged.

7. The Court further finds that the defendant through its duly authorized officers agreed that 25 shares were subscribed for by plaintiff originally and were issued but not delivered to him and were to cover the value of his realty on the corner lot, and 49 shares thereof were to be issued to him for his services; that this modification was made without any consideration at the instance of Dr. Vitkus that he might control a majority of said stock.

8. The Court further finds that although plaintiff performed all of the services required on his part to be performed between the early part of 1949 and the occupancy of the buildings at the beginning of 1952, including the formation of the corporation in September, 1950; and although the plaintiff was a director until 1955 and was treasurer of the corporation for several years between 1950 and 1955, the entire control of the corporation, including the handling of the money and the disposing of the money and the entire operation of the two buildings, was handled by Vitkus alone, with the stockholders' and directors' meetings of the defendant corporation held at various places within and without the City of Cleveland, including one meeting in Florida, without notice to plaintiff or a waiver of notice executed by or tendered to him.

9. The Court further finds that while Vitkus was present for the execution of papers, and was an interested party on a few occasions at the East Cleveland City Hall, the financial office of Zook & Company and the Central National Bank, the consummation of the transactions at those places was entirely the result of the work of the plaintiff and was not the result of the work or influence of Vitkus.

10. There is testimony in the record that the buildings were built for the amount of the financing and there is also testimony to the effect that it required additional money which Vitkus either advanced or caused to be advanced, in addition to the financing proceeds, but the Court does not determine the matter of financing nor the cost nor the accounting as to rentals nor the profit from the sale of the buildings since the sole issue is whether or not the plaintiff was or was not entitled to

specific performance of the agreement to give to plaintiff 74 shares of the common stock of the defendant corporation out of the total issue of 150 shares. The parties in the corporate minutes established the value of each share of stock at Three Hundred ($300.00) Dollars, but the Court has no other knowledge as to its value.

11. The Court does find that the only people interested in the defendant corporation are the plaintiff, and Dr. Vitkus, and the Mrs. Vitkus whom he married in 1954; and that Vitkus and his present wife on behalf of the corporation alone, without notice to the plaintiff, have sold both buildings, one to an outside person and one to Vitkus which, just prior to the instant trial, was sold by Vitkus individually to another outside person.

12. The Court does find that the sales of the apartments and the other financial transactions, including the payment of interest and advancements either to Doctor or Mrs. Vitkus, were without the knowledge and consent of the plaintiff and in the absence of proper corporate action.

13. The Court further finds that the minute book of the defendant corporation indicates that the building project of these two apartments was a profitable one and that the defendant, by its own statements and minute books, indicates and concedes that it has money in its treasury for the use of its stockholders.

14. The Court does find that under the agreement neither the plaintiff nor Vitkus was to receive any money or other consideration for his services, except the distribution of stock, to-wit: 76 shares to Vitkus, or his nominee, and 74 shares to the plantiff; that Vitkus was not entitled to interest upon any money advanced or deposited.

15. The individuals acted solely for the corporation which ratified all individual acts by accepting title to the real estate and all benefits from said real estate.

## CONCLUSIONS OF LAW

1. Plaintiff is without an adequate remedy at law and is entitled to specific performance of his agreement as is set forth in the petition and the findings of fact hereinabove stated.

2. The plaintiff is entitled as a matter of law to the delivery of the twenty-five (25) shares of the common stock of the defendant, J. & J. Building Company, free from any lien or expense, whether it be the 25-share certificate originally issued to him and not delivered to him, or a new certificate for twenty-five (25) shares in lieu thereof, and that he is further entitled either to (a) the delivery of forty-nine (49) more shares of the common stock of said defendant corporation, or (b) the value thereof in money, to be determined upon a proper audit and accounting as to their value if the parties cannot agree upon their value.

3. DeRighter and Vitkus were the only real parties interested in this corporation as stockholders, and the Court concludes as a matter of law that it would be equity to permit the defendant to pay to the plaintiff the value of the forty-nine (49) shares rather than order it to issue the same to plaintiff in whole or in part out of the stock now claimed to be held by Doctor and Mrs. Vitkus, particularly since this Court has made no accounting and it is not required under the issues

in the pleadings to determine the value of each of the shares of common stock of said defendant corporation.

4. Since Dr. John T. Vitkus dominated every act of this corporation in connection with its financing and figures, his knowledge as such president and manager was the knowledge of the corporation and the defendant is bound by reason of his acts as such president, manager and complete dominating officer as to all acts done by it.

5. That the corporation having accepted the benefits of plaintiff's efforts, the entity is responsible for compensating plaintiff therefor.